**UNITED STATES of America, Appellant,**

v.

**Noel Lee DECKER, Barbara K. Decker, Appellees.**

**No. 91–1512.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Feb. 7, 1992.

Peter M. Ossorio (Charles F. Teschner, on brief), Kansas City, Mo., for appellant.

Cynthia L. Reams (Christopher C. Harlan, on brief), Kansas City, Mo., for appellees.

Before ARNOLD,* Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

The government appeals from the district court's decision to suppress evidence seized from Noel and Barbara Decker pursuant to search warrants issued on April 4 and 5, 1990. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

On April 4, 1990, Agent Carl Hicks of the Drug Enforcement Administration removed a package from normal processing at a United Parcel Service warehouse in Kansas City, Missouri because it was hand-addressed and taped. The package was mailed by "L. Decker" in Oceanside, California and addressed to "D & D Heating

---

* The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

and Cooling" in Smithville, Missouri. Hicks called the telephone information operators for these towns and was told that there were no telephone listings for either of these names in the respective towns. Hicks then subjected the package to inspection by a drug-sniffing dog, which reacted as if the box contained drugs.[1] Five law enforcement officers, led by Hicks, thereafter made a controlled delivery of the package to the Smithville address, which turned out to be the home of Noel and Barbara Decker. After Noel Decker signed for the package, he was arrested. The officers then questioned Barbara Decker, Noel's wife, who informed them that there was some marijuana under the couch. Upon this admission, she was arrested for possession of marijuana.

The Deckers were taken to the county jail for booking. A search of their persons at the jail revealed that each possessed small amounts of methamphetamine. Hicks then went to the county courthouse to obtain a search warrant. Once there, he typed a three-page affidavit outlining the above-recited facts and applying for permission to seize illegal drugs and paraphernalia at the Deckers' residence. The county's assistant prosecutor read the affidavit and typed an application for a search warrant.

Agent Hicks next appeared before a county judge, who issued a warrant to search the Deckers' residence and the UPS package. As mentioned above, the affidavit prepared by Hicks stated with specificity the drug items to be seized, but the search warrant issued by the judge did not list any items to be seized other than the UPS package, which was already in Hicks' possession. The search warrant was a standard form relating to stolen property (not to drugs). While the warrant did specify that the apprehended UPS package was being held by Agent Hicks, the issuing judge failed to cross out a standard reference to the UPS package as having been "unlawfully stolen." Moreover, the prosecutor did not sign the warrant, as required by Missouri law. The issuing judge later admitted that these flaws were his fault and acknowledged that the search warrant was not issued in compliance with Missouri law. The judge attributed these oversights to the fact that he was intrigued by the manner in which Agent Hicks became suspicious of the package and the ensuing investigation and therefore did not focus on the language of the warrant.

After obtaining the warrant, Agent Hicks and a state officer returned to the Deckers' residence with the warrant in hand. Neither officer had the affidavit in his possession. When they arrived at the Deckers' home, several officers were already present. County officers executed the warrant, although none of them bothered to read it. The search lasted from approximately 2:00 p.m. until 10:00 p.m. on April 4, 1990, and continued from 8:30 a.m. until 6:00 p.m. on April 5, 1990. The April 5 search was pursuant to a second search warrant authorizing the search of vehicles which were discovered on the Deckers' property during the execution of the April 4 warrant. Although the second search warrant did list the items to be seized, the "unlawfully stolen" reference once again was not crossed out. The affidavit supporting the warrant was identical to that filed by Hicks on April 4 with one additional paragraph explaining that there were vehicles on the Deckers' property which needed to be searched. The second affidavit was attached to the April 5 warrant.

In sum, more than 300 items were seized during the two-day search, many of which are difficult to link to drug trade.[2] The

---

1. For further discussion of Agent Hicks' investigatory method, see section III, *infra*.

2. For example, the officers seized a bible, a typewriter, a calculator, three telephones, a computer, a cable television box, stereo equipment, two video cassette recorders, two televisions, two sets of headphones, a camera, binoculars, a clock radio, two lamps, a dresser, a sewing machine, several desks and stands, a bed, a mirror, a buffet, a microwave oven, a blanket, a saddle, a rug, two cordless drills, two vacuums, silverware, four car jacks, a hydraulic engine hoist, a tool cabinet, assorted manual tools, miscellaneous magazines, welding helmets, a weed eater, a generator, a drill press and vise, a chain saw, a router, a power skill saw, a jig saw, an electric sander, a battery charger, a

first item searched on April 4 was the UPS package which contained over 100 grams of methamphetamine and drug-related documents. Thereafter, the officers seized additional drugs and related paraphernalia located in the Deckers' home. After these seizures, the government asserts that the state prosecutor, who was present at the search for an hour on April 4, ordered the officers to seize anything of value in the home because it appeared to him that the Deckers' personal possessions were subject to the Missouri Criminal Activity Forfeiture Act ("CAFA"). *See* Mo.Ann.Stat. § 513.607.1 (Vernon 1991).[3] The seizure of personal items continued during the April 5 search of the vehicles on the Deckers' property.

A federal magistrate recommended that all evidence seized on April 4 and 5, 1990, be suppressed primarily because the state judge signing the defective April 4, 1990, search warrant did so without reading it, and thereby acted as a rubber stamp. The district court agreed with and adopted the magistrate's recommendation. According to the district court, the foremost defect of the search warrant was that it did not state the items to be seized. This defect was not cured by the details of the affidavit, which the district court found was neither attached to nor incorporated by the warrant. The second defect, according to the district court, was that the prosecutor failed to sign the warrant as required by state law; the prosecutor did sign the affidavit but admitted that he did not prepare or read it. The district court also noted that the issuing judge signed a preprinted form warrant that failed to specify the property to be seized and that erroneously referred to the UPS package as being "unlawfully stolen."

Based on these facts and the testimony of the issuing judge, the district court concluded that the judge abandoned his neutral and detached role and that this abandonment precluded the application of the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984). The district court further reasoned that the search warrant was so facially deficient that the executing officers could not have read and executed it in good faith. The district court also ruled that the April 4 and 5, 1990, searches were in flagrant disregard for the limitations of a valid search warrant and constituted a general search.

In reaching this latter conclusion, the district court did not find credible the government's position that many of the items were seized for forfeiture purposes. The district court found that the prosecutor, who the government contends authorized the forfeiture seizures, presented conflicting testimony as to whether he ever issued such a directive. The prosecutor first stated that he did not direct anyone to seize items; but later, in response to the government's questioning, he claimed to have given a general instruction to the officers conducting the search to take anything of value. Additionally, the district court noted that the prosecutor did not arrive at the Deckers' until late in the afternoon of April 4; by this time, the search, seizures, and inventory had been going on for hours. The district court further noted that no separate inventory was compiled to indicate that items were seized under CAFA; instead, all seized items were included in inventories attached to the search warrants, and the inventories stated that all items were seized as "personal property described in the warrant." For these reasons, the district court did not find the government's forfeiture position persuasive. Because of its findings, the district court granted the Deckers' motion to suppress the evidence seized pursuant to the April 4 and 5 search warrants.

## DISCUSSION

On appeal, the government argues (1) that the issuing judge did not abandon his

barbecue grill, a lawn mower, a flashlight, a "for sale" sign, an ice scraper mitt, a fishing rod, transmission fluid, a gas can, two spare tires, greeting cards, two answering machines, a first-aid kit, a rain coat, sunglasses, jumper cables, and a pair of rubber boots.

3. On April 11, 1990, a CAFA petition was filed in Missouri state court. Because the five-day period for filing a petition had expired, however, it was dismissed.

duty to act in a neutral, detached manner; (2) that the evidence seized should be admitted based on the good faith exception established in *U.S. v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984);[4] and (3) that assuming the warrant was invalid, the drug-related items seized in good faith reliance on a judicially issued warrant should not have been suppressed.

### I. Issuing Judge as Rubber Stamp

 The district court found that the issuing judge signed the warrant without reading it and that he failed to note both that the prosecutor had not signed the warrant[5] and that the warrant did not list the property to be seized. Consequently, the district court concluded that the issuing judge acted as a rubber stamp. The government argues that the district court clearly erred in reaching these conclusions.

To support its claim that the issuing judge did indeed read the warrant and affidavit, the government cites the judge's testimony. When asked if he read the warrant, the judge responded:

> I did, and I know I missed the first sentence in the search warrant that's in the application and the affidavit. I just suppose I missed it. I might not have—I glanced at it. You most generally—they're generally the same and I just—if that sentence is missing, I missed it. And I executed this search warrant on the strength of what the officer told me.[6]

The warrant's glaring omission of the items to be seized supports the district court's finding that the issuing judge never read it. The judge's failure to strike the words "unlawfully stolen" from the warrant further supports this conclusion. The same can be said regarding the judge's failure to ensure that the prosecutor had signed the warrant, as required by Missouri law. *See* note 5 supra. Moreover, the judge himself admitted that he issued "the search warrant on the strength of what the officer told me," as opposed to relying on the written warrant and affidavit.

We thus conclude that the district court did not clearly err in determining that the issuing judge failed to act in a detached and neutral manner. The cases cited by the government to advance its position do not persuade us otherwise. Citing *United States v. Sager*, 743 F.2d 1261, 1266–67 (8th Cir.1984), the government argues that in order to be deemed a rubber stamp, the issuing judge must become a participant in the search itself, a role which the Supreme Court condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). *Sager*, however, did not establish that any conduct short of a judge becoming a participant in the search cannot amount to the judge serving as a rubber stamp. Rather, in *Sager*, this court characterized the defendants' claim that the *Sager* affidavit was so insufficient that any magistrate who acted upon it favorably must have been a rubber stamp as "another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable." *United States v. Sager*, 743 F.2d 1261, 1266–67. The *Sager* court rejected this rephrasing because it had already ruled that the officers in *Sager* "did behave in an objectively reasonable fashion." *Id.* at 1266. Here, we find no clear error in the district court's conclusion that the officers seized hundreds of items unrelated to the search warrants, and thus we cannot rule that the officers behaved in an objectively reasonable fashion.

We are similarly unconvinced by the government's reliance on *United States v. Curry*, 911 F.2d 72 (8th Cir.1990). The government points out that in *Curry*, the warrant did not identify the premises to be

---

4. Because the first two issues turn largely on questions of fact, both parties argue that these issues should be evaluated under the clearly erroneous standard of review.

5. Missouri law demands, among other requirements, that a warrant "(8) Be signed by the prosecuting attorney of the county where the search is to take place, or his designated assistant." Mo.Ann.Stat. § 542.276.2 (Vernon 1991).

6. Presumably, what the issuing judge "missed" was the warrant's failure to list the items to be seized beyond the UPS package.

searched, yet despite this conspicuous absence, this court did not even discuss the rubber stamp issue. The government fails to note, however, that the defendant in *Curry* never raised the rubber stamp issue. The defendant's failure to raise an issue on appeal also prevents the government from persuasively relying on *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In *Sheppard,* the Supreme Court approved a search based on a warrant where the issuing judge intended to authorize a search for evidence of a murder but signed a warrant condoning a search for drugs. In explaining its approval, the Court never mentioned the rubber stamp issue. *Sheppard,* like *Curry,* therefore is inapposite to this case.

## II. Good Faith Exception

■ The government next argues that the *Leon* good faith exception applies here. The government concedes that the April 4 warrant is facially defective for failing to specify the items to be seized, but contends that the affidavit cured this defect by listing particular items. To work this curative effect, an affidavit must be specifically incorporated by reference in and physically attached to the warrant, or at least referenced in the warrant and physically present at the search site. *See United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976). The district court did not find the requisite incorporation or physical presence and therefore ruled that no such curative process occurred here. The government has offered scant evidence to persuade us that this factual ruling was clearly erroneous.

■ Conceding that the warrant was defective and in no way cured by the affidavit, the government contends that the *Leon* good faith exception rule as applied in *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), controls this case. In making this argument, the government recognizes that the *Leon* good faith exception does "not apply in cases where the issuing magistrate wholly abandoned his judicial role...." *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405,

82 L.Ed.2d 677 (1984). Our conclusion that the district court did not clearly err in ruling that the issuing judge did not act in a neutral and detached manner precludes the government's reliance on *Sheppard.*

## III. Seizure of Drug-Related Items

Because officers seized more than 300 items, including a bible, a cable television box, a blanket, a barbecue grill, a lawn mower, and an ice scraper, the district court found that the April 4 and 5, 1990, searches were impermissible, general searches. *See Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038–39, 29 L.Ed.2d 564 (1971). The district court reached this conclusion because it decided that the officers could not have reasonably believed that the scope of the warrant encompassed many of the seized items. *See United States v. Helmel,* 769 F.2d 1306, 1321 (8th Cir.1985). Assuming that many of the items were improperly seized, the government still maintains that the drug-related items, both those found on the Deckers' property and in the UPS package, should not be suppressed. We first address the government's claim with respect to the evidence seized from the residence and then turn to the contents of the UPS package.

■ With regard to the drugs discovered in the Deckers' residence and in their vehicles, the government urges that even if the officers exceeded the scope of the warrant by seizing hundreds of nondrug-related items, we need not suppress evidence lawfully seized pursuant to the terms of the warrant. *See, e.g., Waller v. Georgia,* 467 U.S. 39, 43 n. 3, 104 S.Ct. 2210, 2214 n. 3, 81 L.Ed.2d 31 (1984). While the government accurately presents this rule of law, it does not persuade us that the rule applies to the drugs and related paraphernalia seized from the Deckers' residence. Beyond the UPS package, the April 4 warrant did not identify the items to be seized, and therefore, by relying upon it to seize items in the Deckers' home, the officers conducted an impermissible general search and seizure. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49

L.Ed.2d 627 (1976). Had the affidavit prepared by Agent Hicks been attached to the warrant, this defect might have been cured. But in this case, the affidavit was not attached, and the officers who actually conducted the search never read the affidavit. Accordingly, with respect to the items seized from the Deckers' home and from their vehicles, "the [April 4] search warrant was invalid because it did not satisfy the fourth amendment's particularity requirement. It follows that the [April 5] warrant [to search vehicles on the Deckers' property] was also invalid because probable cause for it was based upon information obtained during execution of the first warrant." *United States v. Curry*, 911 F.2d 72, 77 (8th Cir.1990).

■ The government finally argues that even if the district court correctly suppressed all of the other items seized, the methamphetamine and drug-related documents found in the UPS package should not be suppressed. Both the magistrate and the district court found that the officers acted with flagrant disregard for the limitations of a valid search when they indiscriminately seized hundreds of items unrelated to the scope of the warrant, and therefore suppressed all of the evidence seized pursuant to the April 4 and April 5 search warrants. *See United States v. Marvin*, 732 F.2d 669, 674–75 (8th Cir.1984) ("[F]lagrant disregard for the limitations of the search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all the evidence seized during the search.") (citations omitted). The Supreme Court, however, has expressly dictated that the flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places searched, and not to cases in which the government indulges in excessive seizures. *See Waller v. Georgia*, 467 U.S. 39, 43 n. 3, 104 S.Ct. 2210, 2214 n. 3, 81 L.Ed.2d 31 (1984). According to *Waller*, where items are unlawfully seized but the places searched do not exceed the limits of the warrant, as long as the unlawfully seized items are suppressed, "there is certainly no requirement that lawfully seized

evidence be suppressed as well." *Id.* (citations omitted). The officers here did not exceed the scope of the warrant in terms of the places to be searched, and the unlawfully seized items have been suppressed. Thus, because the warrant specifically identified the UPS package as an item to be seized, *Waller* precludes the application of the flagrant disregard standard to its contents.

■ Before the contents of the UPS package are admitted, however, it must first be determined whether the circumstances justified Agent Hicks' initial seizure of the package at the UPS warehouse on April 4, 1990. More pointedly, the propriety of Hicks' deployment of a drug-sniffing dog must be resolved, particularly with respect to whether reasonable suspicion must exist in order to justify a canine sniff. *See United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (approving a canine sniff where officers had reasonable suspicion to detain the item sniffed for investigation); *see also United States v. Jacobsen*, 466 U.S. 109, 135–40, 104 S.Ct. 1652, 1668–71, 80 L.Ed.2d 85 (1984) (Brennan, J., dissenting) (suggesting that the Supreme Court's analysis in *Place* permits drug-sniffing dogs to randomly roam the streets to identify drug possessors); *see generally* Wayne R. LaFave, *Search and Seizure* § 2.2(f) (2d ed. 1986) (providing a comprehensive review of the use of a trained canine nose for detecting the presence of narcotics). If Hicks was justified in submitting the UPS package to a dog sniff, the question still remains whether he acted properly when he made a controlled delivery of the package to the Deckers' Smithville residence without first obtaining a judicially issued warrant. *See generally United States v. Van Leeuwen*, 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032–33, 25 L.Ed.2d 282 (1970) (discussing the constitutionality of the warrantless detention of packages); *see also United States v. Place*, 462 U.S. at 699, 103 S.Ct. at 2640 (indicating that a warrant must be obtained before a package is searched).

The issues discussed in the preceding paragraph were not litigated below, and thus, the facts with respect to Hicks' initial detention and controlled delivery of the UPS package have not been fully developed. We therefore decline to rule on these issues and remand to the district court to enable the parties to litigate these questions.

## CONCLUSION

We affirm the district court's suppression of the evidence seized from the residence of Noel and Barbara Decker pursuant to the April 4 and 5, 1990, search warrants. We reverse the district court's suppression of the UPS package and remand for further proceedings consistent with this opinion.