# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3345

_____

United States of America

*Plaintiff - Appellee*

v.

Steven B. Davis

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: April 7, 2017
Filed: August 15, 2017

_____

Before SMITH, Chief Judge, SHEPHERD, Circuit Judge, and FENNER, District Judge.[1]

_____

SMITH, Chief Judge.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

Steven Davis was convicted of conspiracy to distribute methamphetamine. Davis appeals, arguing that the district court[2] erred in denying his motion to suppress, motions in limine, motion for mistrial, motion for judgment of acquittal, and proposed buyer–seller instruction. For the reasons below, we affirm.

## I. *Background*

In June 2014, the Iowa Division of Narcotics Enforcement (DNE) began investigating Randy Heinrichs for selling methamphetamine. On August 26, 2014, an undercover DNE agent arranged to purchase methamphetamine from Heinrichs on August 28, 2014. When the undercover agent met with Heinrichs, Heinrichs was arrested, and the DNE searched his residence. The DNE recovered four ounces of methamphetamine.

In a post-*Miranda*[3] interview, Heinrichs identified his source of supply as "Steve." Heinrichs described Steve's approximate age, hair color, telephone number, and two vehicles: a white panel van and a red Dodge pickup. Heinrichs told the DNE that he had been purchasing methamphetamine from Steve for approximately one year—beginning with one ounce every two to three weeks and increasing to two ounces every one to one and one-half weeks. Heinrichs admitted that at the time of his last purchase, on August 27, 2014, he purchased four ounces of methamphetamine for $1,600 per ounce. The purchase occurred at a gas station on the northwest corner of the intersection of 96th Street and F Street in Omaha, Nebraska.

---

[2]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

The Drug Enforcement Administration (DEA) traced the phone number that Heinrichs identified to Steven B. Davis at 4936 South 95th Avenue in Omaha, Nebraska. The DEA closely watched the residence on September 12 and 15, 2014, and observed a white panel van and a red Dodge pickup matching those that Heinrichs described. On September 22, 2014, DEA agents found methamphetamine residue and mail addressed to Davis in the trash outside the residence.

Based on this information, DEA Special Agent James Wahle obtained a warrant to search the residence on September 24, 2014. In his affidavit and application in support of the search warrant, Special Agent Wahle detailed Heinrichs's post-*Miranda* statements; the method and results of tracing the telephone number that Heinrichs said belonged to Davis; the proximity of the residence to the gas station that Heinrichs described as the most recent point of sale (less than one mile away); the observation of a white panel van and a red Dodge pickup at the residence, matching the vehicles that Heinrichs described; the methamphetamine residue and mail addressed to Davis found in the trash outside the residence; and Davis's prior convictions related to the possession and distribution of methamphetamine.

On October 3, 2014, Special Agent Wahle amended his affidavit in support of the search warrant. In the amended affidavit, Special Agent Wahle noted that Nebraska parole officers spot-checked Carrie Long, a parolee and Davis's roommate, on September 29, 2014. During the spot check, officers seized .9 grams of methamphetamine from Long's bedroom. Special Agent Whale stated that Long told the parole officers that "DAVIS and some of his associates possessed and used illegal drugs in the white work van . . . belong[ing] to DAVIS."

On October 9, 2014, DEA agents executed the search warrant and arrested Davis. During the search, agents recovered approximately one ounce of methamphetamine; two digital scales; $12,970 in cash ($200 of which was serialized money used to purchase methamphetamine from Heinrichs); drug paraphernalia; packaging materials; and a cell phone with a phone number matching the number that Heinrichs reported to be Davis's.

Davis was indicted on one count of conspiracy to distribute methamphetamine. The district court granted Davis pretrial release, but it required Davis to wear a GPS ankle bracelet. The court set a preliminary hearing for November 5, 2015. On the morning of the hearing, Davis removed his ankle bracelet and absconded. Davis was apprehended 11 days later in Indiana. He was returned to Iowa and detained pending trial. Ultimately, a jury convicted Davis of conspiracy to distribute methamphetamine, and Davis was sentenced to 180 months' imprisonment.

## II. *Discussion*

On appeal, Davis argues that the district court erred in denying his motion to suppress, motions in limine, motion for mistrial, motion for judgment of acquittal, and proposed buyer–seller instruction. We address each challenge in turn.

### A. *Motion to Suppress*

Before trial, Davis moved to suppress the evidence seized from his residence. Davis argued that the search warrant lacked sufficient probable cause and that its information was fatally stale.

The district court found that the warrant was supported by probable cause because

[i]t was based on the August 2014 statements of Mr. Heinrichs indicating that he had purchased methamphetamine from the defendant for approximately one year. It reported that he had purchased substantial quantities from the defendant. The defendant's criminal history supported Mr. Heinrichs'[s] information about the defendant being a drug dealer. The trash pull which revealed a baggie containing methamphetamine residue also corroborated Heinrichs'[s] statements. It also suggested that some drug activity was taking place recently at the residence. Then the amended affidavit provided evidence of the seizure of methamphetamine from the residence and Ms. Long's statements about the defendant's drug activity at the residence.

The court determined that the information in the warrant was not stale because the amended affidavit described multiple acts that "demonstrate[] a reasonable belief that drug activity was recently associated with the residence and had been ongoing for some[]time." The court concluded by noting that "[i]n the unlikely event that a court were to find that probable cause did not support the issuance of th[e] warrant, the good[-]faith exception to the exclusionary rule in *Leon*[5] would obviously apply."

On appeal, Davis argues that no information in the search warrant connected Davis's drug-related activities to the residence,[6] and that the information contained in the warrant was stale because too much time elapsed between Heinrichs's statements and the execution of the warrant. Further, Davis asserts that the good-faith exception does not apply because Special Agent Wahle had "no information linking

---

[5] *United States v. Leon*, 468 U.S. 897 (1984).

[6] Davis contends that the evidence established that all of Davis's drug-related activities occurred at other locations. Davis concedes that it would have been reasonable for officers to believe that contraband may be found in his van, which was parked outside of the residence, and that "[a] search warrant limited in scope to the van would have been appropriate."

[Davis's] alleged drug distribution to the residence" and was "aware of specific information that excluded Davis from selling drugs from the residence."

### 1. *Probable Cause*

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (quoting *United States v. Johnson*, 601 F.3d 869, 872 (8th Cir. 2010)). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir.), *cert. denied*, 137 S. Ct. 2177 (2017) (internal quotation marks omitted) (quoting *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009)). "We will not disturb a court's finding of probable cause 'unless there was no substantial basis for that finding.'" *Id.* (quoting *United States v. Montgomery*, 527 F.3d 682, 686 (8th Cir. 2008)).

"We assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case." *United States v. Seidel*, 677 F.3d 334, 337 (8th Cir. 2012) (per curiam) (quoting *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001)). "A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *Brackett*, 846 F.3d at 992 (quoting *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir. 2008)). "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." *Seidel*, 677 F.3d at 338 (quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982)).

We conclude that the search warrant application supports a finding of probable cause. The affidavits in support of the warrant detailed Heinrichs's post-*Miranda* statements; the method and results of tracing the telephone number that Heinrichs said belonged to Davis; the close proximity of the residence to the gas station that Heinrichs described; the observation of a white panel van and a red Dodge pickup at the residence (matching the vehicles that Heinrichs described); the methamphetamine residue and mail addressed to Davis found in the trash outside the residence; Davis's prior methamphetamine-related convictions; the September 29, 2014 spot check that recovered methamphetamine in Long's bedroom; and Long's statements about Davis's drug-related activities. Considering the totality of the circumstances, the affidavits and application in support of the search warrant contain sufficient facts to establish a fair probability that evidence of criminal activity would be found in Davis's residence. *See Seidel*, 677 F.3d at 338 ("Many of our cases recognize that the recovery of drugs or drug paraphernalia from the garbage contributes significantly to establishing probable cause." (quoting *United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003))); *Reinholz*, 245 F.3d at 776–77 (finding sufficient facts to support probable cause of finding illegal drugs in home when affidavit established that the trash outside the home contained methamphetamine residue and documents connecting the defendant to the home); *see also United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002) ("An informant's tip is sufficient to support probable cause if the totality of the circumstances shows that it is reliable.").

### 2. *Staleness*

"A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *Johnson*, 848 F.3d at 877 (internal quotation marks omitted) (quoting *United States v. Colbert*, 828 F.3d 718, 727 (8th Cir. 2016)). "We have no fixed formula for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched." *United States v. Nieman*, 520

F.3d 834, 839 (8th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006)). "In investigations of ongoing narcotic operations, intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale." *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)). "A 'lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated.'" *Johnson*, 848 F.3d at 877 (quoting *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010)).

As detailed in the warrant application, the officers had reason to believe that Davis had continually sold methamphetamine for over a year. The warrant application also detailed multiple instances of confirmed drug-related activity at the residence between August 27, 2014, and September 29, 2014. The warrant issued on October 3, 2014, and the search occurred on October 9, 2014. Because the underlying criminal activity was continuing in nature, probable cause did not dissipate during the ten-day period between the last identified drug-related activity and execution of the warrant. Thus, the information contained in the warrant was not fatally stale. *See Colbert*, 828 F.3d at 727 (concluding the information used to establish probable cause was not stale because the affidavit established the existence of an ongoing drug conspiracy).[7]

B. *Motions in Limine*

Davis also filed pretrial motions in limine to exclude evidence of his prior felony drug convictions and evidence of his "flight" from the jurisdiction on November 5, 2015. The court denied Davis's motions in limine. The court determined

---

[7]Because we conclude that the warrant was supported by probable cause and that the information contained within the warrant was not fatally stale, we need not address Davis's good-faith arguments.

that the probative value of the prior convictions was not outweighed by potential undue prejudice, stating:

> I have considered the appropriateness of this evidence as non-propensity evidence under [Federal Rule of Evidence] 404(b). I've also considered a [Federal Rule of Evidence] 403 analysis as to whether or not the probative value is substantially outweighed by undue prejudice, and I find that it is not outweighed by undue prejudice.
>
> The court will allow the evidence of these two prior convictions in for the purposes proffered by the government; knowledge, intent, and absence of mistake.

And the court found that the evidence of Davis's flight was "probative of consciousness of guilt, . . . and it is not unduly prejudicial."

On appeal, Davis argues that the district court should have excluded evidence of his prior felony convictions because the convictions are not relevant to any material issue in this case and are too remote in time. Further, Davis argues that the evidence of his flight could not imply consciousness of his guilt because the flight occurred over a year after his arrest and is irrelevant to whether Davis formed an agreement to distribute methamphetamine.

1. *Rule 404(b) Evidence*

"We review for abuse of discretion rulings admitting Rule 404(b) evidence and will reverse only when such evidence clearly had no bearing on the issues in the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Benitez*, 531 F.3d 711, 716 (8th Cir. 2008). "Rule 404(b) is a rule of inclusion, and, as such, if 'evidence [is] offered for permissible purposes [it] is presumed admissible absent a contrary determination.'" *United States v. Horton*, 756 F.3d 569, 579 (8th Cir. 2014) (alterations in original) (quoting *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006)). Evidence is admissible under Rule

404(b) if it is "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) (quoting *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005)).

Beginning with the first 404(b) consideration, Davis's prior convictions are relevant to the material issue of Davis's state of mind. "It is settled in this circuit that a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." *Horton*, 756 F.3d at 579 (internal quotation marks omitted) (quoting *United States v. Robinson*, 639 F.3d 489, 494 (8th Cir. 2011)). Thus, Davis's prior drug convictions "for simple possession of [methamphetamine] w[ere] material and relevant to prove both his knowledge of drugs and his intent to commit drug offenses." *United States v. Ruiz–Estrada*, 312 F.3d 398, 403 (8th Cir. 2002).

As to the second 404(b) consideration that Davis raises, the prior convictions are similar in kind and close in time to the charged conspiracy to distribute methamphetamine. Davis's prior drug convictions involve possession of methamphetamine and were "eight years old at the time of trial, a length of time we have found sufficiently close on several occasions." *Horton*, 756 F.3d at 580.[8]

---

[8] *See also United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir. 2008) (holding prior convictions of "four, ten and eleven years old" were "not so remote as to be inadmissible"); *United States v. McCarthy*, 97 F.3d 1562, 1573 (8th Cir. 1996) (17 years before trial); *United States v. Holmes*, 822 F.2d 802, 804 n.3 (8th Cir. 1987) (over 12 years); *United States v. Engleman*, 648 F.2d 473, 479 (8th Cir. 1981) (13 years).

Accordingly, we conclude that the district court did not err in admitting evidence of Davis's prior drug convictions.[6]

## 2. *Evidence of Flight*

"It is 'well established' that evidence of flight 'is admissible and has probative value as circumstantial evidence of consciousness of guilt . . . .'" *United States v. Thompson*, 690 F.3d 977, 991 (8th Cir. 2012) (quoting *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991)). It is "universally conceded" that evidence "of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Id.* (emphasis omitted) (quoting *Hankins*, 931 F.2d at 1261). To determine if evidence of flight is circumstantial evidence of guilt, the court must evaluate

> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id.* (quoting *Hankins*, 931 F.2d at 1261).

In this case, the district court determined that the evidence of Davis's flight "is probative of consciousness of guilt, . . . and it is not unduly prejudicial." Given the evidence in this case, this determination was not an abuse its discretion. Davis fled on the morning of a mandatory hearing. Thus, one can confidently infer that his flight was related to the conspiracy charge. "Before his [flight], [Davis] had been made fully aware of the charges against him. Thus, 'there is a sufficient basis in the evidence to

---

[6]Because Davis does not appear to raise the third or fourth 404(b) considerations, we decline to address them.

warrant the inference that the flight was prompted by considerations related to the issue in question.'" *Hankins*, 931 F.2d at 1262 (internal quotation marks omitted) (quoting *United States v. Roy*, 843 F.2d 305, 310 (8th Cir. 1988)).

### C. *Motion for Mistrial*

During trial, Special Agent Wahle testified to the events leading up to and following Davis's arrest. On redirect examination, Special Agent Wahle testified that Davis gave a post-*Miranda* statement about the source of his methamphetamine supply.

> Q:    Now, do you have any information in the DEA's investigation as to who Steven Davis was obtaining methamphetamine from?
>
> A.    Mr. Davis indicated to us who his—where his source of supply lived after we arrested him. The investigation didn't progress past that because Mr. Davis withdrew his cooperation.

The court dismissed the jury from the courtroom. In the jury's absence, Davis objected to the statement as nonresponsive and moved for a mistrial, arguing that the testimony was not previously disclosed, in violation of Federal Rule of Criminal Procedure 16, and constituted an unfair surprise that was substantially prejudicial. Defense counsel argued that the statement implied "that at one point in time [Davis] [wa]s negotiating with law enforcement and [wa]s cooperating with law enforcement basically acknowledg[ing] that he was involved in some conspiracy to distribute methamphetamine, but then withdrew that cooperation."

After extensive argument and voir dire of Special Agent Wahle, the court held that the statement's potential prejudice did not taint the jury or otherwise warrant a mistrial. The court noted, "Here we have a nonresponsive answer that includes two parts. The first is that Mr. Davis indicated where his source of supply lived and [the second is] that he withdrew his cooperation." As to the first part, the court pointed out

that Davis's defense "has not been that he didn't know about any type of drugs." Thus, the court held, "[t]he context of this case . . . makes that statement not particularly prejudicial, particularly in light of the fact that the jury, without that statement, could infer clearly from the evidence presented in this case thus far and unobjected to by the defense that there had to have been a source." As to the second part, the court determined that the use of the term "cooperation" was "not so prejudicial to require a mistrial" because it "does not necessarily implicate plea negotiations or a bargain or any type of arrangement" between Davis and the authorities.

The court offered to give a curative instruction. However, Davis declined the offer, believing that such an instruction "merely highlights or draws more attention to the statement than perhaps would otherwise be given."

THE COURT: Mr. Conway [(Davis's counsel)], that is what I heard you say is that you are specifically not asking for a curative instruction.

MR. CONWAY: That is correct; but for the record, I want to be clear the reason why I am not is because I think that that curative instruction ruling sort of highlights already what is a damaging piece of testimony.

THE COURT: You clearly are not waiving your challenge to the fact that I have denied the mistrial Motion?

MR. CONWAY: Yes.

THE COURT: But in terms of the manner in which we are proceeding, we are proceeding in the manner in which you are requesting, that is, no curative instruction and striking the record—striking the answer as nonresponsive.

-13-

Thus, the court ultimately struck the question as nonresponsive without issuing a curative instruction.

On appeal, Davis argues that the unexpected testimony concerning his post-*Miranda* statements severely prejudiced his defense. Davis argues that the statements directly undercut his defense that he was merely engaged in a buyer–seller relationship and unaware of a larger conspiracy. Further, Davis maintains that "[a] curative jury instruction asking the jury to disregard the statements would have been fruitless and merely served to highlight [Davis's] past cooperation. Aside from [Davis's] own testimony at trial, there was no effective antidote to [Special Agent] Wahle's poisoning of the jury."

We review a district court's denial of a motion for new trial for abuse of discretion. *United States v. Wallette*, 686 F.3d 476, 482 (8th Cir. 2012). Federal Rule of Criminal Procedure 16 requires the government, upon the defendant's request, to "disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). "Failure to comply with Fed. R. Crim. P. 16(a)(1)(A) or a pretrial disclosure agreement is not grounds for reversal unless it prejudiced the substantial rights of the defendant." *United States v. Bledsoe*, 674 F.2d 647, 670 (8th Cir. 1982). Any prejudice arising from a Rule 16 violation is normally remedied by a curative instruction. *See, e.g.*, *United States v. Big Eagle*, 702 F.3d 1125, 1132 (8th Cir. 2013) (noting that a curative instruction is generally sufficient to remedy prejudice from improperly admitted evidence); *United States v. Beltran–Arce*, 415 F.3d 949, 953–54 (8th Cir. 2005) ("As we have oft stated, 'less drastic measures such as a cautionary instruction are generally sufficient to alleviate prejudice flowing from improper testimony.'" (quoting *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997))). "Whether a curative instruction is sufficient must

-14-

be evaluated in the context of the entire trial, including the strength of the government's evidence." *United States v. Encee*, 256 F.3d 852, 854 (8th Cir. 2001).

Davis intentionally and voluntarily rejected the court's suggested curative instruction, which could have remedied much of any prejudice resulting from Special Agent Wahle's testimony. Davis thus effectively "waived his right to appeal the denial of his motion for a mistrial as to any prejudice that would have been cured by such an instruction." *United States v. Petrovic*, 701 F.3d 849, 857 (8th Cir. 2012). "Where such an instruction is given or waived, we 'will affirm a conviction where there was substantial evidence of guilt.'" *Big Eagle*, 702 F.3d at 1132 (quoting *United States v. Diaz–Pellegaud*, 666 F.3d 492, 503 (8th Cir. 2012)).

"To the extent any prejudice from [Special Agent Wahle's] testimony would not have been remedied by a curative instruction, any error by the district court in failing to grant a mistrial was harmless because the jury was presented with 'substantial evidence of [Davis's] guilt.'" *See Petrovic*, 701 F.3d at 857 (internal quotation marks omitted) (quoting *United States v. Weaver*, 554 F.3d 718, 724 (8th Cir. 2009)). Davis's trial lasted three days, and nine witnesses testified. The government introduced into evidence numerous exhibits, including phone records showing dozens of calls between Davis and Heinrichs, and images of the methamphetamine, scales, packaging materials, and cash recovered during the search of Davis's residence. The jury also had Long's testimony confirming Davis's drug sales. Substantial evidence supports Davis's guilt. Therefore, any error in declining to grant a mistrial based on Wahle's statements was harmless. *See id.*

D. *Motion for Judgment of Acquittal*

At the close of the government's case, Davis moved for judgment of acquittal, arguing that there was insufficient evidence to support a conviction. Davis noted that the testimony of two witnesses contained numerous contradictions and no direct evidence proved that he was dealing the quantity of drugs alleged. The district court

denied the motion, finding "there's sufficient evidence for submission to the jury. There is sufficient evidence for a jury to weigh and determine the credibility of the witnesses for all of the elements of the single count charged in terms of the crime of conspiracy to distribute methamphetamine." On appeal, Davis argues that the only evidence that he sold large quantities of drugs to Heinrichs comes from Heinrichs, a highly unreliable and inconsistent witness.

We review the sufficiency of the evidence de novo and view the "evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007).

> "We reverse only if no reasonable jury could find the defendant[] guilty beyond a reasonable doubt." We do not weigh the evidence or the credibility of the witnesses. Rather "the jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict."

*Id.* (citations omitted) (quoting *United States v. Spears*, 454 F.3d 830, 832 (8th Cir. 2006)); *see also United States v. Jefferson*, 725 F.3d 829, 834 (8th Cir. 2013) ("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses . . . ." (quoting *United States v. Coleman*, 525 F.3d 665, 666 (8th Cir. 2008))).

To establish a conspiracy to distribute a controlled substance, "the government must prove (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Taylor*, 813 F.3d 1139, 1146–47 (8th Cir. 2016) (quoting *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014)). An agreement to join a conspiracy to distribute a controlled substance "need not be explicit and can be inferred from the facts of the case." *United States v. Davis*, 826 F.3d 1078, 1081 (8th Cir. 2016). A jury can reasonably infer knowledge of a

conspiracy based on sales of large quantities of drugs beyond that intended for individual use. *See United States v. Mendoza–Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004). Large drug quantities, rather than personal-use amounts, also support an inference that the defendant knew that he participated in a conspiracy, which can be "shown through evidence of an ongoing relationship the purpose of which is buying and selling drugs." *United States v. Moya*, 690 F.3d 944, 949 (8th Cir. 2012).

Davis's main argument is that Heinrichs's testimony was unreliable because he was an inconsistent witness that was cooperating with law enforcement. However, credibility determinations are left to the jury. *Jefferson*, 725 F.3d at 834. Also, as mentioned above, the government presented nine witnesses and numerous exhibits supporting Davis's guilt. "If we view the evidence in the light most favorable to the verdict, as we must, we conclude that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' notwithstanding [Davis's] objections to the unsavory character of some of the witnesses." *United States v. Coplen*, 533 F.3d 929, 931 (8th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, the district court did not err in denying Davis's motion for acquittal.

E. *Proposed Buyer–Seller Instruction*

As a theory of defense, Davis argued that his relationship with Heinrichs was merely a buyer–seller relationship. Davis proposed a buyer–seller instruction, which stated:

> A conspiracy requires more than just a buyer-seller relationship between the defendant and another person. In addition, a buyer and seller of methamphetamine do not enter into a conspiracy to distribute methamphetamine simply because the buyer resells the methamphetamine to others, even if the seller knows that the buyer intends to resell the methamphetamine.

-17-

> To establish that a seller knowingly became a member of a conspiracy with a buyer to distribute methamphetamine, the government must prove that the buyer and seller had the joint criminal objective of distributing methamphetamine to others.

Davis acknowledged that under Eighth Circuit precedent, a buyer–seller instruction is inappropriate when there is evidence of multiple sales of controlled substances in resale quantities. However, Davis urged the district court to adopt the buyer–seller instruction that other circuits employ. The district court declined, stating that it "is bound by the binding precedent in this circuit regardless of what other circuits have determined."

We review the district court's jury instructions for an abuse of discretion. *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 461 (8th Cir. 2016). "Our review is limited to determining 'whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and accurately submitted the issues to the jury.' We will not reverse a jury verdict unless an erroneous instruction affects a party's substantial rights." *Id.* (citation omitted) (quoting *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006)).

On appeal, Davis argues that the district court erred in rejecting his proposed buyer–seller instruction and urges this court to adopt the reasoning of our sister circuits regarding the applicability of the buyer–seller instruction when there is evidence of multiple transactions. "This we cannot and will not do." *United States v. Wyatt*, 853 F.3d 454, 459 (8th Cir. 2017). "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Id.* (quoting *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002)). "While proof of a conspiracy requires evidence of more than simply a buyer–seller relationship, we have limited buyer–seller relationship cases to those involving 'only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use.'" *United States v. Trotter*, 837 F.3d 864, 867–68 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1125 (2017)

-18-

(quoting *United States v. Boykin*, 794 F.3d 939, 948–49 (8th Cir. 2015)). Eighth Circuit law is clear: "[E]vidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." *Conway*, 754 F.3d at 588 (alteration in original) (internal quotation marks omitted) (quoting *United States v. Slagg*, 657 F.3d 832, 842 (8th Cir. 2011)); *see also United States v. Morales*, 813 F.3d 1058, 1068 (8th Cir. 2016) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." (quoting *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc))). When a case involves multiple sales of controlled substances and quantities that are greater than that for personal use, a buyer–seller instruction is not appropriate. *Conway*, 754 F.3d at 592.

Because the evidence establishes that Davis sold resale quantities of methamphetamine over an extended period of time, the district court did not abuse its discretion in rejecting the proposed buyer–seller instruction.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____