# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2794

_____

UNITED STATES OF AMERICA,  *
                            *
    Plaintiff - Appellee,   *
                            *
    v.                      *  Appeal from the United States
                            *  District Court for the District of
MANUEL SARABIA-MARTINEZ,    *  Minnesota.
a/k/a Felipe Gutierrez Fernandez,  *
a/k/a Felipe Rodriguez Fernandez,  *
                            *
    Defendant - Appellant.  *

Submitted: December 10, 2001
Filed: January 14, 2002

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and FENNER,[1] District Judge.

FENNER, District Judge.

Manuel Sarabia-Martinez appeals his conviction and sentence after trial by jury for conspiring to distribute and possessing with intent to distribute methamphetamine, cocaine, and marijuana.

The jury found that Sarabia-Martinez conspired to distribute in excess of 500 grams of methamphetamine. At sentencing, the Honorable David S. Doty, United

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

States District Judge for the District of Minnesota, found that Sarabia-Martinez was responsible for conspiring to distribute the equivalent of over 30,000 pounds of marijuana, which resulted in a base offense level of 38. Judge Doty further found that Sarabia-Martinez was a leader and organizer of an extensive drug trafficking network, and concluded that a four-level enhancement, pursuant to United States Sentencing Guideline Section 3B1.1(a), was warranted. Sarabia-Martinez was sentenced to 360 months imprisonment.

On appeal, Sarabia-Martinez argues that the district court erred at sentencing by holding him responsible for the equivalent of 30,000 kilograms of marijuana and by assessing the four-level enhancement finding that he was an organizer or leader of a conspiracy that involved fewer than five participants, but was otherwise extensive. Sarabia-Martinez further argues that the district court erred at trial by allowing expert testimony which he claims improperly related to his state of mind.

## DRUG QUANTITY

In the case at bar, the jury determined by its special verdict that more than 500 grams of methamphetamine were involved in the conspiracy. The verdict exposed the defendant to an enhanced statutory maximum sentence with the determination of the actual quantity of drugs for the purpose of determining where within the enhanced statutory range the defendant should be sentenced pursuant to the Sentencing Guidelines an issue for the sentencing judge. The government had the burden of proving the quantity of drugs by a preponderance of the evidence. *United States v. Atkins*, 250 F.3d 1203, 1211 (8th Cir. 2001). The base offense level is determined by all acts that were committed, aided, abetted, or willfully caused by the defendant "that occurred during the commission of the offense of conviction." *Id.* (Quoting U.S.S.G. § 1B1.3(a)(1)(A). A district court's drug quantity calculations are reviewed for clear error. *United States v. Moss*, 138 F.3d 742, 745 (1998).

Sarabia-Martinez concedes that he was responsible for conspiring to distribute the equivalent of 29,717 kilograms of marijuana, but claims that the district court erred by relying on the testimony of a cooperating witness to hold him responsible for an additional car load of drugs brought to Minnesota on August 6, 2000.

Arguments about the reliability of a witness are in reality an attack on the credibility of that testimony, and witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal. *United States v. Behler*, 14 F.3d 1264, 1273 (8th Cir. 1994), *cert. denied*, 513 U.S. 960 (1994). *See also Moss*, 138 F.3d at 745. In making its drug quantity determination, "the district court may consider any evidence . . . as long as it has 'sufficient indicia of reliability to support its probable accuracy.'" *Atkins*, 250 F.3d at 1212 (quoting U.S.S.G. § 6A1.3). A sentencing court may determine drug quantity based on the testimony of a co-conspirator alone. *See United States v. Payne*, 119 F.3d 637, 645 (8th Cir. 1997); *United States v. Casas*, 999 F.2d 1225, 1230 (8th Cir. 1993), *cert. denied*, 510 U.S. 1078 (1994).

The record reflects that a cooperating witness on behalf of the government identified Sarabia-Martinez and Luis Gomez-Mercado as his sources for illegal drugs. The cooperating witness made a number of controlled purchases from Sarabia-Martinez and Gomez-Mercado. The cooperating witness testified that on August 7 and 8, 2000, while meeting with Gomez-Mercado to discuss drug purchases, Gomez-Mercado told him that on August 6, 2000, he helped Sarabia-Martinez retrieve a car that had broken down while carrying drugs from California to Minnesota. The car had broken down at the border of North Dakota and Minnesota. Gomez-Mercado said that the car was driven by an older woman and members of Sarabia-Martinez's family. Gomez-Mercado told the cooperating witness that the car was loaded with 30 pounds of methamphetamine, two kilograms of cocaine, and 40 pounds of marijuana.

The cooperating witness' testimony was corroborated by a recorded conversation as well as law enforcement having spotted the car in question both when it was broken down and later at Sarabia-Martinez' residence. The district court was entitled to rely on the testimony of the cooperating witness and did not err by so doing in determining the drug quantity attributable to Sarabia-Martinez.

Defendant's first point is denied.

ORGANIZER OR LEADER ENHANCEMENT

In his second point, Sarabia-Martinez argues that the district court erred by applying a four-level enhancement for his being an organizer or leader of an otherwise extensive drug trafficking network.

The Sentencing Guidelines require that the defendant's offense level be increased by four levels, "if the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive." U.S.S.G. § 3B1.1(a). The terms "organizer" and "leader" are to be broadly interpreted. *United States v. Maxwell*, 25 F.3d 1389, 1399-4000 (8th Cir. 1994), *cert. denied*, 513 U.S. 1031 (1994).

Factors the court should consider in determining whether to apply the four-level enhancement for the defendant's role as a leader and organizer of the criminal activity include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, App. Note 4; *United States v. Harry*, 960 F.2d 51, 54 (8th Cir. 1992).

The enhancement must be supported by a preponderance of the evidence. *United States v. Rodgers*, 122 F.3d 1129, 1133 (8th Cir. 1997), *cert. denied*, 522 U.S. 1061 (1998). However, the defendant need only have directed one other participant to warrant an enhancement. *United States v. McMullen*, 86 F.3d 135, 138-39 (8th Cir. 1996); U.S.S.G. § 3B1.1, App. Note 2. Furthermore, a district court's determination of a defendant's role in the offense is reviewed for clear error. *United States v. Austin*, 255 F.3d 593 (8th Cir. 2001).

In applying the enhancement, the district court found that Sarabia-Martinez "recruited and controlled at least one individual, that is the person who transported the drugs for him from California to Minnesota in early August." As stated above, the government's cooperating witness testified that the car that broke down on August 6, 2000, was driven by an older woman and members of Sarabia-Martinez' family. The cooperating witness thought that the older woman was Sarabia-Martinez' wife, but Gomez-Mercado explained that the woman was not Sarabia-Martinez' wife, she was his driver.

The cooperating witness also saw this woman at Sarabia-Martinez' residence. The cooperating witness testified that the woman lived at Sarabia-Martinez' residence and that he saw her there every time he was there including August 7, 2000, the day after the car carrying drugs had broken down. Gomez-Mercado further told the cooperating witness that Sarabia-Martinez sometimes drove back to Minnesota from California with the older woman and sometimes Sarabia-Martinez flew back. Sarabia-Martinez told the cooperating witness the route his drug cars traveled from California to Minnesota and that they traveled through Billings, Montana at night to avoid the police.

Furthermore, the record shows that Sarabia-Martinez traveled to California to meet with drug suppliers and arrange for drug shipments. Sarabia-Martinez decided what drugs to bring to Minnesota, when to bring them, and how to transport the

drugs. Sarabia-Martinez directed the driver of the drug car and the route the car was to travel as well as the efforts to avoid police detection. Additionally, Sarabia-Martinez fronted drugs to the government's cooperating witness and enlisted the help of others in furtherance of his drug activity. Sarabia-Martinez' planning and organizing was extensive.

The record supports the district court's finding that Sarabia-Martinez was the organizer or leader of a criminal activity that was otherwise extensive.

EXPERT TESTIMONY

In his final point, Sarabia-Martinez argues that the district court erred by allowing Special Agent John Boulger of the Minnesota Bureau of Criminal Apprehension to testify over objection to matters involving Sarabia-Martinez' mental state or personal knowledge.

Walkie-talkies were seized from Sarabia-Martinez' residence and Sarabia-Martinez complains that Special Agent Boulger was improperly allowed to testify that walkie-talkies are used by drug dealers in conducting counter surveillance to determine if they are being watched. Sarabia-Martinez also complains that Special Agent Boulger was improperly allowed to interpret certain notes of Sarabia-Martinez as drug notes.

A district court has broad discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers in areas concerning activities which are not something with which most jurors are familiar. *United States v. Molina*, 172 F.3d 1048, 1056 (8th Cir. 1999), *cert. denied*, 528 U.S. 893 (1999); *United States v. Parker*, 32 F.3 395, 400 (8th Cir. 1994). Federal Rule of Evidence 702 permits a district court to allow testimony of a witness whose knowledge, skill,

training, experience, or education will assist the trier of fact in understanding an area involving specialized subject matter. *Molina*, 172 F.3d at 1056.

The district court clearly had discretion to allow Special Agent Boulger's testimony concerning matters likely to be unfamiliar to jurors. The testimony did not constitute improper evidence of defendant's mental state as he argues.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT