# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2080

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Sentell Peeler

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 12, 2014
Filed: March 5, 2015

_____

Before LOKEN, BRIGHT, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Travis Peeler of conspiracy to possess with intent to distribute more than five kilograms of powder cocaine and 280 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court[1]

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

granted a downward variance and sentenced Peeler to the mandatory minimum of 120 months in prison. Peeler appeals, arguing the evidence was insufficient to support the conspiracy conviction. "We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Harris-Thompson, 751 F.3d 590, 598 (8th Cir.), cert. denied, 135 S. Ct. 415 (2014). Applying this deferential standard, we affirm.

At trial, FBI Special Agent James Somerville testified that, in early January 2012, law enforcement officers investigating widespread cocaine trafficking in Minneapolis began intercepting the phone calls of suspected drug dealer Rossco Ross. The calls revealed that Ross was distributing cocaine and crack cocaine supplied by Musaaleh Muhammad to multiple lower-level dealers. On January 8, Ross complained to Muhammad about the quality of his latest supply. The two arranged a meeting on January 9, and the poor cocaine was "swapped out" for a fresh supply. Ross then began calling his buyers to let them know he had cocaine and "was ready to sell."

On January 12, Ross called Peeler -- who was not previously known to the investigators -- at a Wisconsin phone number. Ross told Peeler he had "some new thunder whenever you ready." Peeler responded "[a]lright," and said he had been "slow rolling" because "you said you was gonna be gone for that little week." Peeler said, "soon as I'm right, I'll give your ass a call." Somerville explained to the jury that "new thunder" meant new cocaine, "slow rolling" meant Peeler had been selling his current supply of cocaine slowly, and "soon as I'm right" meant when Peeler has money to buy more cocaine.

On January 19, Ross called Peeler to ask why he had not heard from him. Peeler responded he was "just waiting on this little bread" and was at "twenty [or] twenty-two." Somerville explained that bread meant money; Peeler was saying he

had about two-thousand or twenty-two hundred dollars.  The next day, Peeler and Ross arranged to meet between Green Bay, Wisconsin, where Peeler lived, and the Twin Cities, where Ross lived.  After calling Muhammad, Ross phoned Peeler, who was already on the road, and told him he would leave for their meeting point after "ridin' over to dude house," and would call again "as soon he done his thing." Somerville explained that "doing his thing" referred to converting powder cocaine to crack cocaine.  Later that evening, Ross and Peeler met in a McDonald's parking lot off Interstate 94 in Menomonie, Wisconsin, where Minneapolis Police Sergeant Troy Schoenberger testified that he observed what appeared to be a narcotics sale. Minneapolis police followed Peeler when he left the rendezvous, and he was stopped by Wisconsin State Trooper Jason Bakken.  Bakken testified that a consensual search of Peeler's car uncovered 81 grams of crack cocaine hidden in a door panel.

Muhammad pleaded guilty to conspiracy to distribute cocaine and testified for the government at Peeler's trial.  Muhammad testified that he had been distributing powder cocaine to Ross for eight or nine years and knew Ross cooked powder cocaine to crack cocaine "on occasion."  During the conspiracy period charged in the indictment, March 2009 to March 2012, Muhammad acquired from one to seven kilograms of cocaine from his supplier each month.  Muhammad would cut (dilute) the powder cocaine and distribute it to Ross and other customers.  Muhammad testified that he sold more than five kilograms of powder cocaine to Ross over this three-year period.  Muhammad knew from their conversations that Ross resold the cocaine to multiple customers, including a buyer named "Travis" from Green Bay.

At the close of the evidence, Peeler timely moved for judgment of acquittal, arguing that a reasonable jury could not find beyond a reasonable doubt that he joined the alleged conspiracy because the government had no evidence, only "impermissible speculation," of anything more than a single 81-gram transaction between a buyer, Peeler, and a seller, Ross.  After hearing argument, the district court denied the motion but then instructed the jury --

-3-

that transient sales where a buyer is purchasing drugs for his own personal use and not for the purpose of distributing or delivering the purchased drugs to another does not, in and of itself, make the buyer a co-conspirator with the seller in the seller's drug distribution conspiracy. If, however, the buyer acquires the drugs from the seller intending to distribute or deliver the drugs to another person instead of using them for his own personal use, or if he purchased the drugs from the seller as part of the continuing buyer/seller relationship, he may be, depending on what the evidence shows, a co-conspirator with the seller in a drug distribution conspiracy.

In closing argument, defense counsel vigorously argued that the evidence established that Peeler was merely Ross's customer, not a co-conspirator in the large conspiracy involving Muhammad, Ross, and many others. The government argued the evidence established that Ross and Peeler had an on-going relationship in which Peeler purchased distribution quantities on at least two occasions,[2] and that Ross's sales of more than five kilograms of cocaine to Peeler and Ross's other customers were reasonably foreseeable to Peeler, even if Peeler was unaware of the full scope of the entire conspiracy.

On appeal, Peeler argues that the government proved only that he had a buyer-seller relationship with Ross, which by itself was insufficient to support the conspiracy conviction. He relies on United States v. Prieskorn, 658 F.2d 631, 636 (8th Cir. 1981), where we noted that "proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy such as is charged here." The principle is well-established, at least in this circuit, but it is limited to a narrow category of cases. "[B]uyer-seller relationship cases involve only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use." United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (quotation omitted),

[2]Agent Somerville testified that 81 grams was "not even close" to the amount a cocaine user would buy, and instead would only be purchased for resale.

cert. denied, 132 S. Ct. 1583 (2012); see United States v. Vinton, 429 F.3d 811, 815-16 (8th Cir. 2005); Prieskorn, 658 F.2d at 634-35. "Evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." United States v. Conway, 754 F.3d 580, 588 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 770 (2014).

In Prieskorn, we held that the evidence was sufficient to convict defendant of participating in the alleged conspiracy, but the district court erred in refusing to give a requested buyer/seller theory-of-defense instruction because "there was evidence indicating" defendant made only one purchase, knew only the seller, and had not ordered the cocaine he bought. Here, the district court gave a theory-of-defense instruction that accurately explained the buyer/seller defense as defined in our prior cases. Counsel for Peeler then vigorously argued this defense in closing. The jury's guilty verdict reflects that it found, in the words of the district court's instruction, that Peeler "acquire[d 81 grams of crack cocaine] from [Ross] intending to distribute or deliver the drugs to another person instead of using them for his own personal use, or . . . purchased the drugs from [Ross] as part of the continuing buyer/seller relationship." In reaching its verdict, the jury listened to the taped phone calls, as well as Agent Somerville's testimony explaining what the code words and jargon used in the conversations meant. Viewed in the light most favorable to the jury's verdict, this evidence together with Muhammad's partial corroboration was sufficient for a reasonable jury to find beyond a reasonable doubt that the 81-gram purchase was part of Peeler's on-going relationship with Ross (and whoever was supplying Ross) to possess with intent to distribute powder and crack cocaine to other persons. "A defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." Conway, 754 F.3d at 587 (quotation omitted).

The judgment of the district court is affirmed.

_____