# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3722

_____

United States of America,

*Plaintiff - Appellee*,

v.

Matthew Davis,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 17, 2015
Filed: June 24, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Matthew Davis was prosecuted for conspiracy to distribute heroin and cocaine. At the close of the government's evidence, Davis moved for a judgment of acquittal, arguing that there was insufficient evidence to convict him. The district court[1] denied

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

the motion, and a jury found him guilty. Davis appeals the sufficiency of the evidence. He also contends for the first time on appeal that the district court erred in refusing a proposed jury instruction concerning his defense that he merely engaged in a buyer-seller relationship. We conclude that there was sufficient evidence to support the conviction, and that Davis waived his objection to the jury instructions. We therefore affirm.

## I.

Davis was charged with conspiring to distribute heroin and cocaine between January 2002 and February 2012. *See* 21 U.S.C. §§ 841(a)(1), 846. The indictment alleged that Davis obtained heroin and cocaine from Timothy Kirlin and distributed the drugs to others. Davis and Kirlin were tried jointly in a seven-day jury trial. Because Davis challenges the sufficiency of the evidence to support the verdict, we set forth the prosecution's evidence in some detail.

The government's theory was that Kirlin obtained heroin and other drugs in Texas and ran a drug distribution network in Kansas City, Missouri, over ten years. The government presented testimony from several co-conspirators who pleaded guilty and agreed to cooperate with law enforcement. Multiple witnesses testified that they aided Kirlin by driving him to conduct drug transactions, and that Kirlin often carried large quantities of heroin and cut smaller pieces for sale in the presence of his buyers.

Spencer Woodard testified that he partnered with Kirlin to sell a variety of drugs, including heroin and cocaine. Woodard said that Davis bought drugs from him or Kirlin about five days a week beginning in 2002. Erica Crofoot similarly testified that Davis bought heroin and cocaine from her and Kirlin on multiple occasions starting in 2002 and continuing for "many years after that."

When Woodard and Kirlin learned that Davis received monthly payments of approximately $6,000 from a trust fund, they viewed him as "a very attractive customer" and began providing him a large amount of drugs on credit. Davis ran up significant debts in some months; at one point, Kirlin and Woodard sold some of Davis's furniture to satisfy his debt. Woodard explained that his relationship with Davis was "[t]o sell him drugs and basically use him for his money."

Roxanne Bertram testified that she sometimes saw Davis driving Kirlin around. Once when Bertram approached Kirlin to buy heroin, Kirlin had no supply and referred her to Davis. Davis arranged to pool his money with Bertram's and give it to one Brad Gabler, who obtained heroin for the three from another supplier.

Woodard testified that he observed Davis sharing drugs with other people. He saw Davis inject Fran Gershon with a variety of drugs, and observed Davis share drugs with Daniel Yousef, Greg Champion, and a couple known as Aaron and Georgia. Woodard said that Davis would give drugs to "anybody that was around . . . when he was partying or had people at his house," and that "one of the attractions that all these drug users had was that [Davis] had a lot of money and had a lot of drugs and he was willing to share them." Crofoot testified that she and Kirlin had been to Davis's apartment a few times and that there was "constant drug use" each time. She herself obtained cocaine and heroin from Davis.

The jury also heard evidence that Davis distributed drugs to Amber McGathey. Woodard observed McGathey at Davis's apartment in late May 2004, lying on a couch and snoring loudly. Woodard thought McGathey looked pale and asked Davis if she was all right. Davis replied that he and McGathey had been partying. Davis called Woodard the next morning and told him that McGathey was not breathing. A day or two later, Davis informed Woodard that McGathey had died and asked for help in disposing of her body. Davis later loaded McGathey's body into his Jeep and left it there for several days before his attorney alerted the police. In a special

interrogatory, however, the jury found that Davis's distribution of drugs was not a but-for cause of McGathey's death.

In his defense, Davis offered testimony from Mark Reeder, a private investigator who interviewed Kirlin before the trial. According to Reeder, Kirlin said that Davis was not involved in the drug conspiracy. Kirlin told Reeder that Davis did not sell drugs for Kirlin and was merely a drug user. Kirlin asserted that Davis had purchased user quantities of drugs from him. Kirlin denied that Davis either drove him around town with drugs or accompanied him to Texas to obtain drugs.

The district court denied Davis's motion for judgment of acquittal at the close of the government's case. The jury then convicted Davis of conspiracy to distribute heroin and cocaine. The district court sentenced Davis to a term of 360 months' imprisonment, to be followed by five years' supervised release. Davis appeals.

## II.

Davis first argues that there was insufficient evidence to support his conviction. A defendant is entitled to a judgment of acquittal only if no "rational trier of fact could have found that the evidence established the essential elements of the charged crime beyond a reasonable doubt." *United States v. Aponte*, 619 F.3d 799, 804 (8th Cir. 2010) (quotation omitted). We view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the verdict. *United States v. Castillo*, 713 F.3d 407, 411 (8th Cir. 2013).

To establish that a defendant conspired to distribute drugs, the government must show that there was an agreement to distribute drugs, that the defendant knew of the conspiracy, and that the defendant intentionally joined the conspiracy. *United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011). An agreement to join a conspiracy need not be explicit and can be inferred from the facts of the case. *Id.* "A single conspiracy

may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998).

Davis argues that he was merely a buyer of Kirlin's drugs and that the government did not produce sufficient evidence to show that he joined the conspiracy. He claims that he was simply an addicted heroin user with independent income to support his habit, and that "[h]is sole . . . reason for associating with Kirlin and Woodard was to buy their drugs and use them." Davis admits that he shared drugs with others, but he asserts that this was "entirely separate" from the conspiracy. He denies that he contributed to the conspiracy by transporting drugs, driving Kirlin, or selling drugs. He also notes that he was incarcerated between July 2005 and February 2009, and thus could not have participated in overt acts described at trial during that period.

We conclude that there was sufficient evidence to sustain the verdict. The charged offense was a conspiracy to *distribute* drugs, not to sell them. The government produced substantial evidence that Davis personally distributed drugs that he received from Kirlin, Woodard, and Crofoot over several years during the charged conspiracy. The evidence showed that all three suppliers knew that Davis was redistributing some of the drugs at his residence. Davis insists that he merely engaged in a buyer-seller relationship with Kirlin and Woodard, but the classic case of a mere buyer-seller relationship is "a single transient sales agreement" in which there is "no independent evidence tending to prove that the [buyer] had some knowledge of the broader conspiracy." *United States v. Prieskorn*, 658 F.2d 631, 634-35 (8th Cir. 1981) (internal quotations omitted); *see United States v. Boykin*, 794 F.3d 939, 948-49 (8th Cir. 2015). A buyer who acquires drugs intending to distribute some of them to other persons may be a co-conspirator with the seller in a drug distribution conspiracy. *United States v. Peeler*, 779 F.3d 773, 775-76 (8th Cir. 2015). Even regularly

purchasing drugs as part of a continuing buyer-seller relationship can be enough, depending on the evidence, to establish membership in a conspiracy to distribute. *Id*.

Because Davis redistributed drugs over a long period of time with knowledge of his suppliers, and enjoyed social benefits from those distributions, it was reasonable for a jury to conclude that he knowingly and voluntarily joined a conspiracy to distribute, and that he shared a common purpose with Kirlin and others. Although Davis, rather than his friends and acquaintances, paid for the drugs that were used at his residence, Davis's redistribution of a portion of the heroin and cocaine increased the overall flow of drugs and the profitability of Kirlin's network. Davis also helped to facilitate a distribution to one of Kirlin's customers after a referral by Kirlin. The jury, of course, is the ultimate judge of credibility, and it was free to credit the prosecution's witnesses and to reject Kirlin's account as relayed by Reeder.

Davis also contends, for the first time on appeal, that the district court erred in denying his proposed jury instruction on a buyer-seller theory of defense. At the close of the evidence, Davis proposed an instruction that the court rejected, and Davis then requested that the court prepare its own instruction on a buyer-seller defense. The court added to an existing instruction the statement that "proof of a buyer-seller relationship, without more, is not sufficient to establish an agreement to distribute a controlled substance on the part of the buyer." Davis's counsel explicitly accepted the court's revised instruction, stating "we're good with Instruction No. 18. I said we have no problem with No. 18 the way you've added that last line. We appreciate that." T. Tr. Vol. VI, at 1221. When a party expressly agrees to an instruction, the doctrine of invited error applies, and any objection to the instruction is waived. *United States v. Binday*, 804 F.3d 558, 582-83 (2d Cir. 2015); *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010); *see United States v. Mariano*, 729 F.3d 874,

881-82 (8th Cir. 2013).  By expressly agreeing to the court's proposed treatment of the buyer-seller defense, Davis waived any objection to the court's refusal to use his alternative proposal.

The judgment of the district court is affirmed.

_____