# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 15-2606

———————————————

United States of America

*Plaintiff - Appellee*

v.

Tyson Bartholomew Trotter

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of North Dakota - Fargo

——————————

Submitted: May 20, 2016
Filed: September 14, 2016

——————————

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

——————————

KELLY, Circuit Judge.

Tyson Trotter was convicted by a jury of a conspiracy to distribute, and to possess with intent to distribute, methamphetamine in violation of 21 U.S.C. § 846. The district court[1] sentenced Trotter to the statutory mandatory minimum sentence of

———————————————

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

twenty years' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). On appeal, Trotter asserts the district court erred in allowing testimony at trial regarding text messages in violation of the best evidence rule. He also appeals his conviction on the grounds that the evidence was insufficient to prove he entered into a conspiracy and that the court's jury instructions were erroneous. Finally, he claims error in the calculation of the amount of drugs attributable to him for purposes of sentencing. Having jurisdiction under 28 U.S.C. § 1291, and finding no error, we affirm.

## I. Background

In June 2014, Katie Feist took over her husband's methamphetamine distribution business after he was arrested and sent to prison. Later that summer, she started getting methamphetamine from John Dheilly. Dheilly told Feist his supplier was named "Tyson"—Trotter's first name—and that they met in the parking lot of a restaurant named Mabel Murphy's in Fergus Falls, Minnesota, to exchange drugs and money.

In November 2014, Feist approached the Grand Forks Narcotics Task Force (GFNTF) and offered to help them with their investigation of drug trafficking in the Grand Forks area in an effort to earn a reduction in her husband's sentence. On November 19, 2014, Feist conducted a controlled buy of methamphetamine from Dheilly, providing him $3,000 in marked money.

On November 22, 2014, Feist accompanied Dheilly to Mabel Murphy's restaurant to obtain methamphetamine. Members of the GFNTF and the West Central Drug and Violent Crimes Task Force conducted surveillance and observed Dheilly get something out of the trunk of a white BMW. Law enforcement stopped both Dheilly's vehicle and the BMW after they left the parking lot. Trotter was driving the BMW. During a search of the BMW, officers found $13,000 under the car seat and $3,000 in the center console. The serial numbers on $2,900 of the money found in the

console matched the serial numbers on the money Feist had given Dheilly in the controlled buy on November 19, 2014. During a search of Dheilly's car, officers found almost half a kilo of methamphetamine, various items associated with the use of methamphetamine, and three cell phones.

On November 26, 2014, Feist informed GFNTF officers that additional drugs would be found in her apartment. The officers conducted a consent search of the apartment and found approximately 40 grams of methamphetamine, drug paraphernalia, and $611 in cash. Feist told officers the money was drug proceeds.

On December 18, 2014, a grand jury indicted Trotter and Dheilly on one count of a drug conspiracy in violation of 21 U.S.C. § 846. Trotter proceeded to trial. Various members of the GFNTF testified, as did Feist.

Joel Lloyd, the agent assigned to work with Feist, testified that after a search warrant was obtained for the cell phones found in Dheilly's vehicle, he extracted all text messages from Dheilly's contact list, saving the information to a thumb drive. Agent Karsten Anderson analyzed the drive and prepared a 345-page exhibit containing all text messages between Dheilly and Trotter from July 26, 2014, through November 22, 2014. At trial, Anderson testified about the text messages and his report was admitted as Exhibit 35.

After trial, Trotter was convicted of conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of methamphetamine, and he was sentenced to the statutory mandatory minimum sentence of twenty years in prison. We address each of Trotter's alleged errors in turn.

## II. Discussion

We first address Trotter's argument that allowing Agent Anderson to testify as to the content of the text messages between Trotter and Dheilly from July 26, 2014, through November 22, 2014, violated Federal Rule of Evidence 1002, the best evidence rule.[2] Trotter asserts Anderson's testimony violated the rule because only "some of the text messages from November 22" were introduced into evidence. Trotter did not object to the officer's testimony before the district court, so our review is for plain error.[3] United States v. White Bull, 646 F.3d 1082, 1091 (8th Cir. 2011) (holding that if there is not a timely objection to the admission of evidence at trial, review is for plain error). To obtain relief under plain error review, Trotter "must show (1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." Id. Even if these first three requirements are met, however, we "will only reverse if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Jean-Guerrier, 666 F.3d 1087, 1091 (8th Cir. 2012) (quoting Puckett v. United States, 556 U.S. 129, 135 (2009)).

Trotter cannot meet this burden. Contrary to Trotter's assertion otherwise, Anderson's report contained all the text messages between Trotter and Dheilly from July 26, 2014, through November 22, 2014, as extracted from Dheilly's cell phone. Anderson's report was then admitted at trial as Exhibit 35. Because the messages themselves were admitted into evidence, and Anderson's testimony was based on them, allowing Anderson to testify about the text messages did not violate the best evidence rule. See United States v. Buchanan, 604 F.3d 517, 523–24 (8th Cir. 2010)

---

[2]Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."

[3]Trotter's appellate attorney did not represent him at trial.

("The purpose of the best evidence rule . . . is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." (quoting United States v. Yamin, 868 F.2d 130, 134 (5th Cir. 1989))).

Trotter next argues the evidence presented at trial was insufficient to prove Trotter and Dheilly entered into a conspiracy. Trotter contends the evidence showed no more than a buyer-seller relationship. Our review of the sufficiency of the evidence is de novo. United States v. Ruiz-Zarate, 678 F.3d 683, 689 (8th Cir. 2012). We will not reverse unless no reasonable jury could have found the defendant guilty. Id.

To prove that Trotter conspired to distribute and possess with the intent to distribute methamphetamine under 21 U.S.C. § 846, the government must show (1) he entered into an agreement to distribute and possess with intent to distribute methamphetamine, (2) he knew the purpose the agreement, and (3) he intentionally joined the conspiracy. See United States v. Sanchez, 789 F.3d 827, 834 (8th Cir. 2015). An agreement to join a conspiracy does not have to be explicit; it may be inferred from the facts and circumstances of the case. Id. "[T]he mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (quoting United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981)). While proof of a conspiracy requires evidence of more than simply a buyer-seller relationship, we have limited buyer-seller relationship cases to those involving "only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use." United States v. Boykin, 794 F.3d 939, 948–49 (8th Cir. 2015) (quoting United States v. Peeler, 779 F.3d 773, 776 (8th Cir. 2015)). As we have noted, "[e]vidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." Peeler, 779 F.3d at 776 (quoting United States v. Conway, 754 F.3d 580, 588 (8th Cir. 2014)).

Trotter does not dispute that there was evidence to show he sold methamphetamine to Dheilly on November 22, 2014, but argues the only other evidence supporting a conspiracy was the testimony of Feist. Trotter asserts Feist's testimony was unreliable because she was using methamphetamine and admitted her drug use negatively affected her memory.[4]

Assessing the credibility of witnesses is a task for the jury. United States v. Malloy, 614 F.3d 852, 861 (8th Cir. 2010). "A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." United States v. Hodge, 594 F.3d 614, 618 (8th Cir. 2010). It is "[o]nly when credibility determinations are internally inconsistent, based upon incoherent or implausible testimony, or directly at odds with objective evidence" that a more searching review is warranted. Id. That is not the case here.

Feist testified about traveling with Dheilly on more than one occasion to the Mabel Murphy's parking lot to get methamphetamine from a person named "Tyson." She testified that the amounts of methamphetamine they obtained were not small, personal use amounts, but larger quantities for distribution. Feist and Dheilly then repackaged and sold the methamphetamine. Though Feist conceded that using methamphetamine affected her memory about some things, such as whether she used methamphetamine after returning from Fergus Falls on November 22, the text messages between Dheilly and Trotter corroborated much of her testimony. As even Trotter concedes, the text messages were compelling evidence of a conspiracy. The text messages showed Dheilly and Trotter were in contact with each other

---

[4]Trotter also argues the evidence was insufficient to support the guilty verdict because Anderson's testimony was legally deficient and unfairly prejudicial since it violated the best evidence rule. As we have noted, however, Anderson's testimony was properly admitted. Trotter offers no other reason to question its admissibility or reliability, so we do not consider this argument in our analysis.

approximately every month from July through November 2014 and the messages included discussions of when and where they would meet. The text messages showed Trotter was involved in an ongoing conspiracy with Dheilly rather than a one-time buyer-seller relationship. We conclude there was sufficient evidence in the record for a jury to find Trotter had entered a conspiracy with Dheilly.

Trotter next argues that the court erred in not instructing the jury first that a buyer-seller relationship alone is insufficient to create a conspiracy and second that it could only convict him for the conspiracy he was part of, not any other conspiracy. Trotter did not request either instruction and so our review is for plain error. United States v. Looking Cloud, 419 F.3d 781, 788 (8th Cir. 2005) ("A party cannot preserve a claim of instructional error for appellate review unless he makes a sufficiently precise objection and also proposes an alternate instruction.").

A defendant is entitled to an instruction explaining his or her theory of the case "if the request is timely made and if the proffered instruction is supported by the evidence and correctly states the law." United States v. Slagg, 651 F.3d 832, 848 (8th Cir. 2011) (citing United States v. Adams, 401 F.3d 886, 898 (8th Cir. 2005)). Here, Trotter did not timely request a buyer-seller or multiple conspiracy instruction, and the evidence does not support either instruction. As to the buyer-seller instruction, Feist's testimony and the text messages between Trotter and Dheilly demonstrated that Trotter and Dheilly were meeting at least once a month between July and November 2014 at the Mabel Murphy's parking lot for the purpose of exchanging distribution-quantity amounts of methamphetamine and money. See Boykin, 794 F.3d at 948–49. "Whether trial evidence established a single conspiracy is determined by the totality of the circumstances, including consideration of the nature and location of activities and events, identities of the co-conspirators, and the time frame in which the acts occurred." United States v. Sanchez, 789 F.3d 827, 835 (8th Cir. 2015) (quoting United States v. McCauley, 715 F.3d 1119, 1123 (8th Cir. 2013)). Trotter's argument that there were multiple conspiracies in this case amounts to little more than an

extension of his argument that he was not a knowing member of the charged conspiracy, and he identifies none of the factors relevant to the determination. The district court committed no error in not submitting either a buyer-seller or a multiple conspiracy instruction to the jury. See Looking Cloud, 419 F.3d at 788.

Finally, Trotter argues that "the jury clearly erred in attributing 514.07 grams of methamphetamine to [him]"—an amount triggering the statutory mandatory minimum sentence of twenty years' imprisonment under 21 U.S.C. § 841(b)(1)(A).[5] He contends there was no evidence to connect him to the 27.75 grams of methamphetamine Feist purchased from Dheilly on November 19, 2014, or the 39.94 grams found during the November 26, 2014, search of Feist's apartment. If these amounts are not included, Trotter asserts, he would not be subject to the twenty-year mandatory minimum.

"We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Jefferson, 725 F.3d 829, 833 (8th Cir. 2013). As an initial matter, we note that the jury did not attribute a specific amount of methamphetamine to the conspiracy—it found that the quantity of methamphetamine that was distributed or intended to be distributed as part of the conspiracy was 500 grams or more. Thus, we do not know if the jury included the disputed quantities when reaching the "500 grams or more" finding. But even if the jury did not include these amounts, there was evidence of additional transactions between Trotter and Dheilly. For example, Feist testified that

_____

[5]Section 841(b)(1)(A)(viii) requires a district court to sentence a defendant convicted of distributing, or possessing with the intent to distribute, "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine," who has a finalized prior conviction for a felony drug offense, "to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . . " Trotter does not dispute he has a qualifying conviction.

she accompanied Dheilly to the Mabel Murphy's restaurant at the end of August, where Dheilly obtained a pound of methamphetamine. The text messages between Trotter and Dheilly around that time corroborate this testimony, showing the two men planned to meet at this location for the purpose Feist described. Other text messages indicated Trotter and Dheilly also met at the end of July. We conclude there was sufficient evidence to support the jury's finding on the quantity of methamphetamine attributable to the conspiracy on which Trotter was convicted.

To the extent that Trotter asserts the district court erred in relying on the jury's finding, we disagree. Because Trotter did not make this argument to the district court, our review is for plain error. United States v. Caballero, 420 F.3d 819, 822 (8th Cir. 2005). The jury found beyond a reasonable doubt that Trotter was responsible for 500 grams or more of a mixture containing methamphetamine. Accordingly, that quantity became the "floor" for sentencing purposes. United States v. Umanzor, 617 F.3d 1053, 1062 (8th Cir. 2010); see also United States v. Campos, 362 F.3d 1013, 1015–16 (8th Cir.2004) ("Once the jury found beyond a reasonable doubt that the amount of methamphetamine [the defendant] intended to distribute was [500] or more grams, it was a legal impossibility for the district court to find by a preponderance of the evidence that the amount [the defendant] intended to distribute was less than [500] grams."). The district court did not make any drug quantity findings that increased Trotter's sentence above the statutory mandatory minimum sentence required by the jury's finding in the special interrogatory, and thus committed no error, plain or otherwise.

### III. Conclusion.

For the reasons set forth above, we affirm the judgment of the district court.

_____