# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-3421
_____

United States of America

*Plaintiff - Appellee*

v.

Gabriel Orlando Ramirez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: October 22, 2021
Filed: December 28, 2021
_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Gabriel Orlando Ramirez of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced him to 240 months imprisonment with 5 years supervised release.

_____

[1]The Honorable Karen E. Schreier, District Judge for the District of South Dakota.

On appeal, Ramirez argues that there was insufficient evidence to support his conviction and that the district court erred in its calculation of methamphetamine attributable to him. Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding no error, we affirm.

## I.

After receiving information that Ramirez was trafficking methamphetamine, local and federal law enforcement agencies launched a two-year investigation featuring surveillance, confidential informants, controlled drug transactions, and wiretaps of those controlled drug transactions. On May 31, 2019, officers executed a search warrant at Ramirez's residence and arrested him. Following trial, a jury convicted Ramirez and the matter proceeded to sentencing. Ramirez's Presentence Investigation Report (PSR) attributed a total of 21.04 kilograms of actual methamphetamine to Ramirez, which pursuant to United States Sentencing Guidelines (USSG) § 2D1.1, resulted in a base offense level of 38. Ramirez made three objections to the PSR in which he contested the amount of methamphetamine attributed to him, arguing that the amount ascertained from cooperating witness Curtis Webb's testimony was a "guess" and "exaggeration"; the amount derived from confidential informant Aaron Pope's testimony was based on "guesses and estimates"; and for the same reasons, the total 21.04 kilograms attributed to him was inaccurate. However, at sentencing, the district court overruled all three of Ramirez's objections, deeming Pope's and Webb's testimony credible. It calculated Ramirez's criminal history category as III with a Guidelines range of 292 to 365 months imprisonment before varying downward and sentencing Ramirez to 240 months imprisonment with 5 years supervised release.

## II.

Ramirez first argues that there was insufficient evidence to support the jury's verdict. Specifically, he contends that Pope and Webb were not credible, their testimony was "insubstantial," and at best, the government's evidence established a

buyer-seller relationship between Ramirez and the two cooperating witnesses but did not prove the existence of a conspiracy.

"We . . . 'review the sufficiency of the evidence to sustain [this] conviction de novo, viewing the evidence in the light most favorable to the jury's verdict and reversing only [where] no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Ramirez-Martinez, 6 F.4th 859, 868 (8th Cir. 2021) (second and third alterations in original) (citation omitted). "To establish that a defendant conspired to distribute drugs, the government must show that there was an agreement to distribute drugs, that the defendant knew of the conspiracy, and that the defendant intentionally joined the conspiracy." United States v. Davis, 826 F.3d 1078, 1081 (8th Cir. 2016). "An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." United States v. Conway, 754 F.3d 580, 587 (8th Cir. 2014) (citation omitted); see also Ramirez-Martinez, 6 F.4th at 868 (explaining "inferences from the parties' actions" may be sufficient to show agreement). Further, "[b]uyer-seller relationship cases involve only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use," whereas "[e]vidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." United States v. Peeler, 779 F.3d 773, 776 (8th Cir. 2015) (citations omitted).

At trial, Special Agent Emmet Warkenthien with the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that he began utilizing Pope as a confidential informant in September 2018 and arranged several controlled drug transactions in which Pope purchased methamphetamine from Ramirez: on November 5, 2018, Ramirez "fronted"[2] approximately 48.4 grams of methamphetamine to Pope; on December 3, 2018, Ramirez fronted Pope another

---

[2]Witness testimony defined "fronted" as meaning that Ramirez would give methamphetamine to Pope or Webb without requiring any payment, and after Pope or Webb had re-distributed that methamphetamine and earned a profit, they would pay Ramirez.

approximately 62 grams of methamphetamine; and on February 25, 2019, Ramirez sold Pope approximately 59.9 grams of methamphetamine.  Pope testified that, prior to becoming a confidential informant, he began buying methamphetamine from Ramirez, whom he knew as "Cheech," in 2017.  Pope purchased methamphetamine from Ramirez approximately every one to two weeks and estimated that, prior to becoming a confidential informant, he purchased a total of ten pounds of methamphetamine from Ramirez.

Sergeant John Spaeth of the Sioux Falls Police Department testified that after receiving information that Ramirez was involved in the sale of narcotics, he began investigating Ramirez.  He conducted surveillance of Ramirez during this investigation and was therefore able to identify Ramirez in court.  Narcotics Detective Dan Christiansen with the Minnehaha County Sheriff's Office then testified that he began investigating Ramirez in 2018 and used a confidential informant to participate in four controlled purchases of methamphetamine from Webb.  Upon Webb's arrest, he identified Ramirez as a source of methamphetamine. Detective Christiansen explained that Webb, pursuant to his plea agreement, later agreed to cooperate and assist the government with its investigation of Ramirez.

Webb testified that he was introduced to Ramirez, whom he also knew as "Cheech," in late 2018.  Webb initially purchased methamphetamine from an individual known as "Thug P," and Thug P charged Webb $8,000 for one pound of methamphetamine.  Thug P obtained methamphetamine from Ramirez, and to cut costs, Webb began purchasing methamphetamine directly from Ramirez, cutting out the "middleman."  Webb testified that unlike Thug P, Ramirez charged only $5,000 to $6,000 per pound of methamphetamine.  Webb testified that he met with Ramirez "pretty often," purchasing methamphetamine from Ramirez on an approximately weekly basis, typically purchasing one to two pounds of methamphetamine on each occasion.  However, Webb testified that on two occasions, he purchased four pounds of methamphetamine from Ramirez and paid as much as $32,000 per transaction. As with Pope, Webb explained that Ramirez often fronted methamphetamine to him and after he sold the methamphetamine and earned a profit, he would pay Ramirez.

On the day of Webb's arrest, law enforcement officers seized approximately two pounds of methamphetamine from him, and at trial, Webb testified that he had obtained the two pounds of methamphetamine from Ramirez earlier that same day. Webb explained that he purchased methamphetamine from Ramirez for resale to individuals who would then resell it.

The government introduced testimony from a forensic chemist with the Drug Enforcement Administration (DEA), who testified to the weights and purity of methamphetamine sold by Ramirez, along with wiretapped recordings from the controlled drug transactions between Pope and Ramirez and photographs of the approximately two pounds of methamphetamine seized from Webb on the day of his arrest.

Viewing this evidence in the light most favorable to the jury's verdict, a reasonable jury could find Ramirez guilty of conspiracy to distribute a controlled substance beyond a reasonable doubt. The quantities of methamphetamine involved far surpassed the "small amounts of drugs consistent with personal use." See id. Further, the testimony of Pope and Webb is *alone* sufficient to establish Ramirez's involvement in the conspiracy. See Conway, 754 F.3d at 587. However, the government did not rely solely on Pope's and Webb's testimony but instead, also presented testimony from multiple law enforcement officers (who corroborated Pope's and Webb's testimony) and a forensic chemist with the DEA, in addition to exhibits including wiretapped recordings from the controlled drug transactions between Pope and Ramirez and photographs of the approximately two pounds of methamphetamine seized from Webb on the day of his arrest. Ultimately, we find there was sufficient evidence to support the jury's verdict.

Ramirez next argues that the district court erred in its calculation of the drug quantity attributable to Ramirez. "On appeal, '[w]e review [a district court's drug-quantity finding] for clear error and reverse only when "the entire record definitely and firmly illustrates that the lower court made a mistake."'" United States v. McArthur, 11 F.4th 655, 659 (8th Cir. 2021) (per curiam) (alterations in original)

(citation omitted). "At sentencing, '[t]he government bears the burden of proving drug quantity by a preponderance of the evidence.'" Id. (alteration in original) (citation omitted). When determining the drug quantity attributable to Ramirez, the district court was free to "consider amounts from drug transactions in which [he] was not directly involved if those dealings were part of the same course of conduct or scheme," and "[t]his includes all transactions known or reasonably foreseeable to [him] that were made in furtherance of the conspiracy." Id. (citation omitted). Additionally, "[a] sentencing court may determine drug quantity based on the testimony of a co-conspirator alone," United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002), and "a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal," United States v. Rodriguez, 711 F.3d 928, 938 (8th Cir. 2013) (citation omitted).

Ramirez objected to the PSR's factual statements regarding the quantities of methamphetamine attributable to him, challenging those quantities which were determined from Pope's and Webb's testimony alone. However, the district court overruled Ramirez's objections, finding that Ramirez's drug distribution conspiracy involved 21.04 kilograms of methamphetamine. Ramirez's argument is one of credibility. At sentencing, he argued that Pope's and Webb's testimony about the amount of methamphetamine obtained from him is based on guesses and estimations, and the district court should only attribute to him those quantities which were actually *recovered* from Pope or Webb (i.e., a total of 1,088.1 grams or a summation of the 935.8 grams seized from Webb and the 43.6, 55.8, and 52.9 grams recovered from Pope). However, the district court found Pope's and Webb's testimony credible. See R. Doc. 108, at 9 ("I listened to the testimony of Mr. Webb and Mr. Pope, and I found both of them to be believable witnesses."). Specifically, the district court noted that when Webb was arrested and found in possession of methamphetamine, he immediately identified Ramirez as his source. Further, the district court noted that Pope was a confidential informant who participated in several controlled purchases from Ramirez, which the district court found corroborated Pope's testimony that he purchased approximately ten pounds of methamphetamine from Ramirez prior to becoming a confidential informant. In

deciding that a base offense level of 38 was appropriate, the district court found that in light of the other evidence presented at trial, the testimony of Webb and Pope would have to be discounted dramatically to affect the offense level and that the evidence did not warrant discounting their testimony to that extent. The district court explained:

> There was a quantity of over 21 kilograms of actual methamphetamine attributed to the defendant. For him to fall to a level 36, it would have to be an amount less than 4.5 kilograms of methamphetamine actual, which is more than 16 kilograms less than what he's attributed to in the report. So even giving all benefit of the doubt to the defendant, he would be—remain in the level 38 where he is currently classified under the [PSR].

R. Doc. 108, at 10.

After reviewing the evidence presented at trial and the arguments set forth at sentencing, we find that there is nothing in the record which "definitely and firmly illustrates that the lower court made a mistake." McArthur, 11 F.4th at 659 (citation omitted). All other evidence aside, the testimony of Pope and Webb was alone sufficient to support the district court's drug quantity determination, Sarabia-Martinez, 276 F.3d at 450, and the district court was free to deem their testimony credible, see Rodriguez, 711 F.3d at 938. Therefore, finding no clear error, we affirm the district court's drug quantity determination.

III.

For the foregoing reasons, we affirm the district court.

_____